Western Union Telegraph Company v. Newhouse.

No. 369.

WESTERN UNION TELEGRAPH COMPANY v. NEWHOUSE.

TELEGRAPH COMPANY. — *Delivery of Telegram.* — *Diligence to Find Person Addressed.* — *Negligence.* — Where a telegram was addressed to Thomas J. Newhouse, Vandalia freight yards, Terre Haute, Indiana, and a messenger took the telegram to said yards, but failed to find said Newhouse there, and was informed by the assistant yardmaster in charge thereof that no such person was employed in or about the yards, and that he did not know any person by that name, which statements were concurred in by others present, it was not a sufficient delivery of the message to leave it with the yardmaster, who made some effort to, but failed to, deliver it, but the company should have made further search for Newhouse, whose name appeared upon the city directory, and who was known to the postmaster, and to several other persons in public places in the city, and whose whereabouts could have been ascertained.

SAME. — *Telegram.* — *Addressed in Care of Another.* — *What Amounts to.* — *Judicial Notice.* — It can not be said in this case that the message was directed to Newhouse, in care of the agent of the freight yards, as freight yards are not judicially known to be places where telegrams may be left, when addressed there, without further inquiry when the person addressed is not found there.

SAME. — *Telegram.* — *Negligent Failure to Deliver.* — *Mental Anguish and Suffering.* — *Recovery for.* — Where the only pecuniary loss sustained by a negligent failure to deliver a telegram is the cost of the message, there may be a recovery, in addition to such cost, for the mental anguish and suffering occasioned by such failure to deliver, and the amount of recovery must necessarily be left largely to the judgment of the jury under the direction of the court, and a judgment will not be reversed because excessive, unless it appears to be such at first blush.

INSTRUCTIONS TO JURY. — *Damages.* — *Special Verdict.* — *When Error to Refuse to Give.* — It is error for the court to refuse proper instructions as to the measure of damages, where it is the duty of the jury to assess damages, even though a special verdict is asked for, provided all the legal rules relative to the request for, and submission of, such instructions are complied with.

From the Vigo Superior Court.

*A. L. Mason, J. M. Butler, A. H. Snow* and *J. M. Butler, Jr.*, for appellant.

*G. W. Faris, S. R. Hamill* and *J. P. Stunkard*, for appellee.

REINHARD, C. J.—The appellee recovered a judgment in the court below against the appellant for damages for failing to deliver a message. The jury, at the request of the parties, returned a special verdict. The appellant submitted special instructions to be given the jury upon the subject of the measure of damages. The instructions seem to state the propositions of law, to which they were directed, accurately, but they were refused by the court. It is quite true that where a special verdict is to be returned, no instructions upon the general principles of law need be given the jury, inasmuch as the court will apply the law to the facts found specially. *Louisville, etc., R. W. Co.* v. *Hart*, 119 Ind. 273.

But where, as in the present case, it is also the duty of the jury to assess damages, it is not only proper, but necessary, for the court to charge the jury as to the law governing the measure of damages in such cases.

The following cases cited by appellant's counsel, though, perhaps, not decisive of the point, are indicative of what the duty of the court is, respecting instructions in cases where a special verdict is demanded: *Bird* v. *Lanius*, 7 Ind. 615; *Michigan Southern, etc., R. R. Co.* v. *Bivens*, 13 Ind. 216; *Indianapolis, etc., R. W. Co.* v. *Bush*, 101 Ind. 582; *Louisville, etc., R. W. Co.* v. *Frawley*, 110 Ind. 18; *Louisville, etc., R. W. Co.* v. *Flanagan*, 113 Ind. 488.

We are of the opinion that it is erroneous for the court to refuse proper instructions as to the measure of damages, where it is the duty of the jury to assess the damages, even though a special verdict is asked for; provided, of course, that the instructions are submitted in time, and all other legal rules relative to the submission of, and request for, such instructions are complied with.

It is insisted, on the part of the appellee, that the instructions requested and denied were not signed by counsel, and that hence no error could have been committed by the refusal to give them.

We have made a careful examination of the record, and have failed to find that the instructions were signed by the attorney for appellant, or were even submitted to the court before the beginning of the argument.

The record recites that, after the evidence was closed, the appellant requested the court to charge the jury in writing, on the question of damages, and in particular to give each of the following instructions:

.The instructions requested, properly numbered, are set forth, and at the close of the same follows this recital:

"That the court thereupon refused to give either of said instructions, to which ruling defendant, at the time, in open court, excepted, which exception was noted at the time on the margin of each of said instructions, dated and signed by the judge presiding."

These recitals are contained in the bill of exceptions, and we are not able to find any reference to these instructions in any other portion of the record. It does not appear that they were signed by the defendant's attorney, or any one else, or that they were requested before the commencement of the argument. The decisions of the Supreme Court have firmly established the rule that unless the statutory provisions in this respect are complied with, and such compliance is made to appear affirmatively by the record, the refusal to give the instructions does not constitute reversible error. R. S. 1881, section 533. *Beatty* v. *Brummett*, 94 Ind. 76; *Johnson* v. *Gwinn*, 100 Ind. 466; *Chicago, etc., R. R. Co.* v. *Hedges, Admx.*, 105 Ind. 398; *Hutchinson* v. *Lemcke*, 107 Ind. 121; *Board, etc.*, v. *Legg, Admr.*, 110 Ind. 479; *Craig* v. *Frazier*, 127 Ind. 286.

There is no available error in the refusal of the instructions.

It is next insisted, on behalf of appellant, that it was not established, and does not appear from the special verdict, that the appellant was guilty of any negligence or failure to discharge its duty in the delivery of the message.

The appellee had resided in the city of Terre Haute for seven years or more. It appears that his daughter Laura Newhouse, who was in attendance at the sick bed of her grandmother, the mother of the appellee, at her residence at or near Lawrence, Indiana, undertook to send a message to her father from Lawrence to Terre Haute, informing him of the condition of his mother, so that he might have time to come to Lawrence and see her before her death, she being then in a dying condition. The message was given to the appellant's telegraph operator at Lawrence, by Laura Newhouse, on the 24th day of July, 1890, at about 11 o'clock A. M., for transmission to the appellee, at Terre Haute, Indiana, and was in the following words and figures:

"LAWRENCE, INDIANA, July 24, 1890.

" *To Thomas J. Newhouse, Vandalia Freight Yards, Terre Haute, Indiana:*

"Come at once if you see your mother alive.

. "LAURA NEWHOUSE."

The operator agreed to send the message at once, and collected from Laura Newhouse the customary charges of twenty-five cents for the transmission of the same. The telegram was received at Terre Haute on the same day, at about 11.45 o'clock A. M., during the usual business hours of the company, and between 1 and 1.30 o'clock P. M. of that day was sent by a messenger to the Vandalia freight yard office, which was within two blocks of No. 507 North Twelfth street, where appellee was then, and had been, residing for seven months, and which was within one mile of the appellant's office, where the dispatch had been received. The messenger boy found one Albert Andrews, assistant yardmaster of the Vandalia freight yards, in charge of said yards, the principal yardmaster being absent. Upon inquiry of Andrews, the messenger was informed by him that no such person as Thomas J. Newhouse was employed or stayed in said yards, and that he (An-

drews) did not then know any one by that name, and that no such person was there.

In the presence and hearing of the messenger, Andrews inquired of three other employes in the yards, who were then in the office, as to whether or not they knew of such a person as Thomas J. Newhouse, and each of them said, in the messenger's presence and hearing, that he did not know of any one bearing that name. The messenger then handed the telegram to Andrews, and asked him to receipt for the same in the delivery receipt book, who, after some hesitation, received the message and receipted for it, and said he would endeavor to find Newhouse and deliver it to him. Newhouse had not been in the habit of receiving messages or other communications at said office, and had never been employed about the freight yards. The message left with Andrews was never delivered to the appellee, although Andrews made some efforts to send it to him, and the appellee received no information thereof until the 3d day of August, 1890, when he went to the appellant's office at Terre Haute, and was given a copy of it. The appellant's agents and employes never made any inquiry at Terre Haute concerning the appellee's whereabouts, and made no efforts to deliver the message, other than those indicated. On the day the dispatch was sent, the appellee was at his place of residence in Terre Haute, and could have been easily found there by the messenger; the address of the appellee was then contained in a book containing the addresses of the citizens of Terre Haute, at the postoffice in that city, and was also in the city directory of Terre Haute, and the appellant had a copy of said directory in its office in that city.

To reach the town of Lawrence, from Terre Haute, by rail, requires about two and one-half hours, and, had appellee received the message promptly, he would have had ample time in which to go and see his mother before her death. She died at about 12 o'clock noon, on July 31,

1890, and appellee was not able to be with her until after her death, and by reason of his failure to be in attendance at her bedside in the last days of her illness, and during the last hours of her life, and because she died without his seeing her during her last illness, the appellee suffered great sorrow, anxiety and distress of mind.

The foregoing facts appear among others in the special verdict, and give the basis of the appellee's right to recover. The controlling question is whether they show a liability on the part of appellant, for the want of proper diligence in delivering the message. Was the appellant justified, under the circumstances, in leaving the telegram at the office of the freight yards, or was it bound to go farther and look for the appellee in other parts of the city? When the messenger was informed that no such person as Thomas J. Newhouse had been or was then employed about the yards, and that no such person was known there, was it the duty of the company to make further search for Newhouse, and ascertain, if possible, whether or not he had a residence in the city, and if so, deliver the message there? There was some testimony to the effect that the direction of the message to the freight yards was inserted at the instigation of the operator at Lawrence, but there is no finding upon this subject by the jury, nor is there any averment to that effect in the complaint. We must, therefore, accept the view urged by appellant's counsel, that the message was written and sent, inclusive of the direction or address, as prepared by the sender, or by the operator for her, and under her directions.

It is doubtless the duty of a telegraph company which undertakes to transmit a message over its lines from one of its stations to another, to use proper diligence in delivering the same, and the question of what will constitute diligence is ordinarily one for the jury. *Western Union Tel. Co.* v. *Cooper*, 71 Tex. 507.

In the case of *Western Union Tel. Co.* v. *Houghton*, 82 Tex. 561, 27 Am. St. Rep. 918, a telegram from a mother to her husband, informing him of the serious illness of their son, and requesting him to come home, was directed to the husband in care of another person. By some mishap the name of the latter person was not given correctly in the message by the sender, and the company was unable to find him in the town to which it was directed, as there was no such person living there. The company made no effort to find the addressee himself, who had been in the town about three or four weeks, working at the carpenter's trade, and was at work within two hundred yards of the telegraph office, and had been about the depot often, and had spoken to the operator several times. His boarding house was in sight of the telegraph office; he was well acquainted in the town, knew the sheriff, county clerk, postmaster, and they knew him. He had other acquaintances there also, among whom were the hackmen and liverymen, and some relatives of his wife. Under these circumstances the court held that the company had not discharged its obligations to the plaintiff; that it was its duty to use reasonable diligence to find the addressee, and deliver the message to him notwithstanding it had been sent in care of another, whom the messenger was unable to find.

The case cited seems to hold the company liable upon the ground that when it discovered there was no such person as the one in whose care the message was addressed, it became its duty to find the addressee, or at least to use reasonable care in doing so. At the same time, the court takes pains to distinguish between the facts in that case and one where the message was actually delivered to the person in whose care it was sent, and cites with approval the case of *Western Union Tel. Co.* v. *Young*, 77 Tex. 245, 19 Am. St. Rep. 751.

In that case the telegram was delivered by the messenger to a member of the firm in whose care it was addressed, and this was held to be a sufficient delivery. The import of the message was much like the one in the present case. It was directed to "Mrs. Young, care of W. R. Henry & Co., Ft. Scott, Kansas," informing her that her mother was dying. Mrs. Young's failure to receive the dispatch in time to reach the place of her mother's death before the burial, was claimed to have caused her great mental anguish and suffering, for which she sought to recover damages of the company. The message was tendered to W. R. Henry, a member of the firm of W. R. Henry & Co., at Ft. Scott, who declined to receive it, but gave the messenger such directions as would have enabled him to find Mrs. Young.

The trial court instructed the jury that, under these circumstances, it was the duty of the company's agent to make a reasonable effort to find her, and deliver the dispatch to her in person. The Supreme Court reversed the judgment for error in giving this instruction, saying:

"The liability of the company must be determined by the terms of its contract. Its obligation was not to deliver to W. R. Henry & Co., and to Mrs. Young, but to deliver to them as her agents, properly addressed to her, to be dealt with by them as they deemed best. The direction, 'To Mrs. Young, care of W. R. Henry & Co.,' has the same meaning and legal effect as it would have had if the direction had been 'To W. R. Henry & Co., for Mrs. Young.' The company contracted to deliver to W. R. Henry & Co., for the benefit of plaintiff's wife, and when they delivered to a member of that firm their liability was at an end. The court should have so charged the jury."

*In Western Union Tel. Co.* v. *Cooper, supra,* the telegram was addressed to Dr. J. R. Keating, and was as follows:

"Come at once; bring Laurie; Josephine sick. J. M. Cooper."

Josephine was the wife of plaintiff, and then about to be confined, and Laurie was the sister of Josephine and wife of Dr. Keating, a physician. The nature of the message was explained to the operator at the time it was sent. The message was taken to the addressee's office by the messenger, but was not delivered, owing to his absence therefrom. Dr. Keating had a residence in the town, near the office, and was well known, even by the messenger himself. He had been in the country, but had returned before the dispatch was received at the telegraph office. It was held proper to refuse to instruct the jury that the messenger used proper diligence to deliver the telegram, and that the question as to whether there had been such diligence was one for the jury.

In *Jaeger* v. *Western Union Tel. Co.*, Louisiana Court of Appeals (not reported), the telegram was addressed:

"To Marie Hunter, Grunewald Opera House, New Orleans."

The addressee was an actress having an engagement with a theatrical company, and the message was left at the box office of the opera house, and delivered to the manager of the troupe. In an action by the addressee against the company for damages, for failure to deliver to Miss Hunter in person, it was held that there had been a sufficient delivery, the court saying:

"The company could have done no more than it did. No address was given other than that of the Grunewald Opera House, New Orleans. The messenger of the company could not be expected to wait all day at the opera house until the arrival of Miss Hunter. He could deliver it only to some one representing the opera house."

In a case in our own State, where the action was for the recovery of the statutory penalty for failure to deliver the message to the addressee in person, he being absent from the city, it was decided by the Supreme Court, that leaving the message at the hotel where such addressee resided, in

charge of the hotel clerk, was a sufficient delivery. *Western Union Tel. Co.* v. *Trissal,* 98 Ind. 566.

In *Western Union Tel. Co.* v. *McDaniel,* 103 Ind. 294, it was held to be the duty of the sender of the message to make the address reasonably definite, and failing to do so, and if by reason of such failure the company is unable to find the addressee, the sender is guilty of contributory negligence, and can not recover the statutory penalty.

On the question of diligence in delivery, see further: *Western Union Tel. Co.* v. *Eskridge,* 33 N. E. Rep. 238; *Reese* v. *Western Union Tel. Co.,* 123 Ind. 294; *Western Union Tel. Co.* v. *McKibben,* 114 Ind. 511; *Given* v. *Telegraph Co.,* 24 Fed. Rep. 119; *Turner* v. *Hawkeye Tel. Co.,* 41 Iowa, 458 (20 Am. Rep. 605).

As to the degree of care and diligence required in the transmission of telegraphic messages, the authorities are not uniform. A collection of them may be found in 4 Lawson's Rights and Rem., section 1959, from which we extract the following expressions of the different courts as descriptive of the diligence necessary to be exercised:

Thus, in Massachusetts it is declared that "due and reasonable care" is required. *Ellis* v. *Am. Tel. Co.,* 13 Allen, 226.

In Pennsylvania the requirement is said to be "the exact diligence which is the condition precedent to all faithful service." *Passmore* v. *Western Union Tel. Co.,* 78 Pa. St. 238.

In New York the courts say that "ordinary care and diligence" is all that is required. *Baldwin* v. *United States Tel. Co.,* 45 N. Y. 744 (6 Am. Rep. 165).

While telegraph companies are public agencies, the weight of authority now holds that they are not held to the extraordinary responsibilities of common carriers, in the sense of being insurers of the correct transmission of messages. 4 Lawson's Rights and Rem., section 1955, and note. That they are required to employ a high degree of care

and diligence in the transmission and delivery of messages, can not be doubted. Such care and diligence, of course, varies according to the importance of the message sent, and where its contents are such as to apprise the company of its significance, or it is otherwise informed of the same, it will be held to a strict accountability for negligence in delivery.

It seems to be conceded that if the telegram is directed in care of a particular person, firm, hotel, or establishment, a delivery to such person, or a member of the firm or clerk of the hotel, or one in charge of the place in care of which the message was sent, will be a sufficient one.

The message now under consideration was one of peculiar importance and urgency. Had there been no specific directions for its delivery at the freight yards, it is doubtless true that the appellant would have been required to use every reasonable effort to find the appellee in the city of Terre Haute.

In that case it would have been incumbent upon the appellant to search the city directory, or use such other means as were within its reach to make a speedy discovery of appellee's whereabouts. But when the message was directed to the addressee at the freight yards, as was the case here, the important question is, was the company required, when its messenger had ascertained that no such person as the addressee was employed or known about the place, to make further efforts to find him? To determine the obligation of the company in such a case, is a question of vast importance, not only to telegraph companies, but to the public at large. If the message had been addressed in care of some person at the freight yards, it is not disputed that a delivery to such person would have been a full discharge of the appellant's obligation. In that case the person in whose care the telegram is sent is constituted the agent of the addressee, and the company can not be held responsible if such agent fails to make prompt delivery.

Nor can it be true, we think, that the existence or absence of such agency can be dependent solely upon the employment or omission of the words "in care of." Thus, if the telegram in question had been addressed "to Thomas J. Newhouse, Terre Haute House, Terre Haute, Ind.," we apprehend that the duty of the company in delivering the same would not have been different from what it would be if the telegram were directed "to Thomas J. Newhouse, in care of Terre Haute House," etc. We think if the telegram were directed to the addressee at the hotel, the character of the house, together with the address, would be sufficient warrant to the company that the message was to be left there for the addressee. And so it would be where the dispatch is directed to a person on a train, at the house of some commercial firm, or at a place the public character of which is such as to lead naturally to the conclusion that the addressee will call for it, or that it will be delivered to him by those in charge. We do not undertake to say, however, that even then in all cases a delivery to the person in charge would be sufficient. There may be peculiar circumstances under which it would not be.

We do not think the phrase "in care of" can be the only mode of indicating to the company, or from which it has a right to infer, the existence of an agency, but are inclined to believe that the same may depend upon other things, such as the character of the house or establishment to which it is directed, the fact of the addressee's previous presence there, and other circumstances.

There is nothing in the special verdict indicative of the character of place a freight yard is. Courts know, judicially, that there are such places, and the kind of business usually transacted there. They will take cognizance of the fact that freight yards are places where the employes of the yards and shippers of stock and merchandise may resort and have business, but that there is con-

VOL. 6—28

nected with such yards an office at which mail and telegraphic messages are received by persons having business with the company as shippers, etc., we are unable to say, and think that if such was the practice at the Vandalia freight yards, the appellant should have proved it. As the special verdict is silent upon the subject, we must assume that it was not proved.

We do not think that the freight yards of a railroad company are judicially known to be such a public place, and of that character, that a telegraph company may properly leave a telegram directed to a person at such yards without further inquiry. We think when the messenger was informed that there was no such person at and about the yards as Thomas J. Newhouse, he should have so reported, and further search should have been made for Newhouse. We think the direction to the freight yards was but an indication that Newhouse might be found there, and when it was ascertained that he was not there, we can not say that the company was absolved from making any further efforts to find him. The agents of appellant could easily have ascertained his whereabouts, as it appears from the special finding, by consulting the city directory, or inquiring for him at the post office. Our conclusion is that the appellant did not use sufficient diligence to find the appellee and deliver the message to him.

The question is again raised in this case whether, under the facts, there can be a recovery for mental anguish and suffering occasioned by the failure to transmit, where no pecuniary loss is shown other than the cost of the message. That there may be such recovery we think is settled by the decisions in this State. *Reese* v. *Western Union Tel. Co., supra*; *Renihan* v. *Wright*, 125 Ind. 536; *Western Union Tel. Co.* v. *Stratemeier* (Ind. App.), 32 N. E. Rep. 871.

The second paragraph of the answer attempts to set up a state of facts which appellant's counsel insist makes the Vandalia freight yards a place similar to a hotel, where

messages might be delivered to the person in charge for addressees having business or other occasion to be there, without looking for such addressees themselves. The jury made no finding as to whether or not these freight yards were such a place, and as the appellant had a right to a finding upon this question, it is contended that the failure to so find renders the verdict contrary to the law and the evidence. This position is not tenable. True, the appellant had a right to a finding, but the failure to find is equivalent to a finding against it.

The only averments in this answer are, that these yards cover a large extent of territory, and contain many tracks and moving trains, cars and locomotives; that the appellant's messenger found the yards in charge of Andrews, the assistant yardmaster, and that it was a part of the latter's duty to make delivery of telegraphic messages addressed to the Vandalia freight yards, and that the message in question was accordingly delivered to him. That messages were received here for those not employes of the yards or the railroad, is not stated. Nor does the uncontradicted evidence show that it was a duty of the yardmaster to receive and deliver such messages. Neither is there any averment in this answer that an office was connected with the yards where mail or telegrams were received, even for employes in the yard. We think the jury had the right to find against the appellant on this point, and as they made no finding at all upon the subject, it was the same in effect, and the failure does not constitute error.

It is also insisted that the damages are excessive, and have no tangible basis to rest upon. Damages for mental anguish being recoverable, the proper amount to be assessed is a matter that must necessarily be left largely to the sound judgment of the jury, under the directions of the court. We can not say that $400 was too much in the present case, or that such an amount, under the facts

of this case, appears to be the result of prejudice, partiality or corruption on the part of the jury, and which, at first blush, impresses one as outrageous and excessive.

We are unable to find any reversible error.

Judgment affirmed.

Filed March 30, 1893.