## WESTERN UNION TELEGRAPH COMPANY v. W. G. HOLLEY.

### Decided April 24, 1909.

**Death Message—Delay in Delivery—Negligence—Evidence.**

In a suit for damages for delay in delivery of a death message, evidence considered, and held that although the message was addressed to W. C. Halley instead of W. C. Holley, and the house number was given as 1002 instead of 1003,

(1) It could not be said as matter of law that the evidence failed to establish negligence on defendant's part, or that it established such contributory negligence proximately entering into the result as would be conclusive against plaintiff's right of recovery.

(2) The negligence of the sender's agent in copying from a memorandum the name and address of the addressee should not be attributed to the addressee.

(3) The evidence did not require a finding that the misdirection of the telegram was the proximate cause of the entire delay in delivering the same.

Appeal from the District Court of Tarrant County. Tried below before Hon. Irby Dunklin.

*Spoonts, Thompson & Barwise,* for appellant.—The message in question, being addressed as it was, "Mrs. W. C. Halley" instead of "Mrs. W. C. Holley," and being addressed to her at "1002" Kennedy Street instead of "1003" Kennedy Street, the appellant having promptly transmitted the message from Austin to Fort Worth, and having taken it to 1002 Kennedy Street, and having sought to make delivery there, it had performed all obligations assumed by it or fixed on it by the law, and the trial court should therefore have peremptorily directed a verdict for it.

The error of Otis E. Carter in writing the wrong street address for the message in question, combined with the further error of W. J. J. Terrell in writing the wrong name as the addressee of the message, directly and proximately caused, or at least beyond dispute contributed to cause, the delay in the delivery of this message. Minds of reasonable men could not differ but that the error in the name and street address of this message was the real and sole proximate cause of the delay in delivery, and as a matter of law a verdict should have been directed for appellant on this issue.

These samples of names from adjudicated cases seem to us to establish that the two names, "Holley" and "Halley," are not *idem sonans:*

"Carhart" and "Cawhart" are not (Carhart v. Britt, 3 Texas Civ. App., 373); "Coonrad Furnash" and "Conrad Furninash" are not (Shields v. Hunt, 45 Texas, 427); "McKee" and "McRee" are not (McRee v. Brown. 45 Texas, 506); "Brow" and "Brown" are not (Brown v. Marqueze, 30 Texas, 78); "Townsend" and "Townsen" are not (Townsend v. Ratcliff, 50 Texas, 152); "Orr and Lindsley" and "Orr & Lindsey" are not (Selman v. Orr, 75 Texas, 530); "John R. Favers" and "John R. Faver" are not (Faver v. Robinson, 46 Texas, 205); "Nepomaceno Nanez" and "Pumaseno Nanes" are not (Harkness v. Devine, 73 Texas, 628); "Banks" and "Burks" are not (Collins v. Ball, 82 Texas, 267); "Nuckols" and "Nickols" are not (Dodge v. Phelan, 2 Texas Civ. App., 448); "The Southern Pacific Railway Company" and "The Southern Pacific Company" are not (S. P. Co. v. Block, 84 Texas, 22); "Fist" and "First" are not (Woolridge v. State, 13 Texas App., 443).

*Idem sonans* can not exist if the attentive ear finds no difficulty in distinguishing the two words. To be *idem sonans* the words must be identical in pronunciation (State v. Griffie, Missouri, 23 S. W., 878). In this case the words Griffie and Griffin are held not to be *idem sonans.*

Neither are the words Mathews and Mathew *idem sonans* (Robson v. Thomas, 55 Mo., 581).

The name of Barnard Hysinger is not *idem sonans* with the name of Barent Hysinger (Ducommun v. Hysinger, 14 Ill., 249).

*Templeton & Agerton,* and *W. P. M'Lean, Jr.,* for appellee.—The mistakes made by the sender of the message and by his agent in giving the wrong street address, and in mis-spelling the name of the addressee of the message, did not relieve appellant of the duty to exercise ordinary care to ascertain for whom such message was intended,

Vol. LV Civil—28.

and to deliver same to the addressee thereof within a reasonable time. W. U. Tel. Co. v. Burrow, 30 S. W., 379; W. U. Tel. Co. v. Wafford, 97 S. W., 324; W. U. Tel. Co. v. Hankins, 110 S. W., 539; W. U. Tel. Co. v. Norris, 60 S. W., 982.

The mistake in the street number of Mrs. Holley did not relieve appellant of the duty to exercise ordinary care to deliver the message to the addressee thereof, notwithstanding such mistake. W. U. Tel. Co. v. Smith, 33 S. W., 743; W. U. Tel. Co. v. Cain, 40 S. W., 624; W. U. Tel. Co. v. De Jarles, 27 S. W., 792, holding that "when the addressee of a telegram not sent to the care of anyone is not at the place of address, it is not sufficient for the company to leave the telegram at such place, but reasonable diligence must be used to find him."

W. U. Tel. Co. v. Waller, 4 S. W., 695 and 696, holding though a telegram is addressed "care some hotel" the telegraph company does not discharge its whole duty by inquiring at the various hotels in the place if by ordinary care the addressee could be found elsewhere. W. U. Tel. Co. v. Cooper, 71 Texas, 514 and 515.

The mistake of writing a small "a" for an "o" and *vice versa*, is one so commonly made that the court, under the evidence in this case could not say as a matter of law that the making of such a mistake by the sender of the message combined with the mistake in the street number of the addressee was such contributory negligence as relieved the defendant of the duty to exercise ordinary care to deliver such message to the party for whom it was intended, or as will preclude plaintiff from recovering the damage occasioned by the failure to exercise such care. W. U. Tel. Co. v. Smith, 33 S. W., 744; W. U. Tel. Co. v. Wafford, 97 S. W., 324; W. U. Tel. Co. v. Hankins, 110 S. W., 539.

The names "Halley" and "Holley" are *idem sonans* and the trial court did not err in submitting to the jury the issue of negligence on the part of defendant in failing to make a reasonable effort to deliver the message, notwithstanding the mistake in the orthography of the name of the addressee of the message. W. U. Tel. Co. v. Wafford, 97 S. W., 324, holding Warford *idem sonans* with Wafford. Bosse v. Cadwallader (Texas Sup.), 24 S. W., 798, holding the names Bosse and Busse *idem sonans*. Lyne v. Sanford, 82 Texas, 58, holding Forris and Farris *idem sonans*.

W. U. Tel. Co. v. Hankins, 110 S. W., 539, holding (1) Holenville and Holdenville are so similar as to give notice under the doctrine of *idem sonans* to a telegraph company that a telegram addressed to Holenville was intended for Holdenville. (2) A concordance in names is always some evidence of identity. (3) Notwithstanding the mistake in the name there was evidence sufficient to require the submission of the case to the jury and the court did not err in refusing to instruct a verdict for the defendant. Foster v. State, 1 Cr. App., 531, holding Foster and Faster *idem sonans*. Roberts v. State, 2 Cr. App., 4, holding Lindsay *idem sonans* with Lindsey. Fontleroy and Fauntleroy held *idem sonans*, 27 Cr. App., 381. Dillauntry, Dillahintry and Dillahuntry held *idem sonans*, 74 Texas, 346. Giboney and Gibney held *idem sonans*, 81 Texas, 422. Fenn and Finn

held *idem sonans,* 25 S. W., 127. Faust and Foust held *idem sonans,* 163 U. S., 452, 41 L. ed., 224. Hanaford and Hanoford held *idem sonans,* 55 S. W., 987.

The fact that the evidence disclosed that plaintiff and his wife were known by the family name of "Halley" as well as by the name of "Holley," raised an issue of negligence on the part of the defendant which required the submission of the case to the jury, regardless of the question of contributory negligence. Leland v. Eckert, 81 Texas, 229; Jester v. Steiner, 86 Texas, 419; McNeil v. O'Connor, 79 Texas, 229; Lemberg v. Cabaniss, 75 Texas, 229; Robertson v. DuBose, 76 Texas, 6.

CONNER, CHIEF JUSTICE.—This is an appeal from a judgment in appellee's favor in the sum of three hundred and eighty dollars for the failure to deliver to appellee's wife a death message, resulting in alleged damages of two thousand dollars. Appellee and his wife at the time lived at 1003 Kennedy Street, Fort Worth, Texas. Her sister Alice died in the city of Austin on the morning of March 9, 1907. The surviving husband, Otis E. Carter, entrusted the transmission of a message to Mrs. Holley to his friend W. J. J. Terrell, who delivered to appellant's agent at Austin, about three fifteen o'clock p. m. on said 9th day of March, 1907, a telegram in the following terms:

"To Mrs. W. C. Halley, 1002 Kennedy Street, Fort Worth, Texas. Alice passed peacefully away this morning. Funeral Monday afternoon. Otis E. Carter."

The telegram arrived in Ft. Worth about 3:40 o'clock p. m. on the day of its transmission, and had it been seasonably delivered to Mrs. W. C. Holley, she would have been enabled to attend her sister's funeral, but the telegram was in fact not delivered until some time Monday morning, March 11, when it was too late for her to do so.

Appellant's principal contention on the trial below and here is that Otis E. Carter and his agent at Austin were guilty of negligence in misdirecting the telegram, and that such negligence or mistake was the cause of the failure to deliver it promptly. This is denied by appellee, who further insists, as pleaded below, that Mrs. Holley lived immediately across the street some sixty feet away from 1002; that she was well known in the vicinity, both by the name of Holley and Halley, and that notwithstanding the misdirection pleaded and shown, appellant by the exercise of ordinary care could and would have delivered the telegram to appellee in ample time to have visited her sister's funeral.

The questions presented are dependent upon a proper construction of the facts. We will not set out the evidence at length, but in addition to what has already been stated will undertake to summarize it as follows:

R. L. Gordon, appellant's delivery clerk at Fort Worth, testified that the message came to his desk at three forty-five or three fifty o'clock Saturday evening, and that he at once turned it over to the

telephone clerk to be phoned out to the addressee if she had a telephone, and if not, to return it to him. The telephone clerk returned it to him promptly, saying that the party had no phone. He then gave the message to a delivery boy to be taken to the address named in the telegram; that he read the message and knew that it was a message relating to death, and knew the importance of speedy delivery; that he so told the boy, to whom the message was given, who left the office about four o'clock; that a Mr. Hare took his (Gordon's) place in the office when he went off duty; that he was not in the office when the boy came back with the message; that Mr. Hare worked until six o'clock, when a Mr. Sparks, the night clerk, came on; that he (Gordon) laid off on Sunday and Mr. Sparks worked for him as a substitute; that when he got back on duty Monday morning at seven o'clock, he found the message in a drawer in the office and went to work to see what could be done with it; that in ten or fifteen minutes he ascertained it was for Holley and phoned out and talked with Mr. Holley, and later sent the message to Mrs. Holley at 1003 Kennedy Street; that "finding the name Holley was just mere guesswork;" that if the message had come directed to W. C. Holley he did not think there would have been any difficulty in delivering it; "you could have looked him up in the phone book and telephoned the message to him in five minutes."

Ernest Trott, the boy who attempted to deliver the message on Saturday evening and who at the time of the trial was in the employ of Collins Art Company, testified that the message had been given to him by Mr. Gordon, and that he had taken it out to 1002 Kennedy Street; that a lady came to the door, whom he did not know, and that he asked her if that message went there; she replied that it did not and that she did not know the party; that she was not able to give him any information as to where the party lived to whom the message was addressed; that he then went out and started to inquire at another place, when a lady across the street at 1003 came out and asked him whom the message was for and that he told her "whatever was on the envelope—W. C. Halley;" that this lady did not claim the message nor ask him to let her see it; that he later went to 1004 Kennedy Street, 1008 Kennedy Street, and to the corner of Pine and Kennedy; at neither of the places named was the party to whom the message was addressed known by those of whom inquiry was made.

The record fails to show that Mr. Hare was offered as a witness, but J. E. Sparks testified that he went on duty about six o'clock, March 9, and remained until about one on Sunday, March 10; that soon after he went on duty on Saturday afternoon he gave the message to a delivery boy and told him to deliver it; that the boy soon thereafter returned and reported that he could not locate the party. The record fails to show who this boy was or what he did, and after he returned the message to the office, no further effort appears to have been made to deliver it, until Mr. Gordon came back on duty Monday morning. Nor does the record show who was on duty as delivery clerk from one o'clock on Sunday, when Mr. Sparks went off duty, until seven o'clock the next morning, when Mr. Gordon came back. Mr. Sparks testified on cross-examination that he had had six

years' experience as a delivery clerk and knew that names were often misspelt; that he knew the telegram in question was a death message, and knew the importance of prompt delivery; that it had not occurred to him that the message was intended for W. C. Holley; that after the return of the boy to whom he had delivered the message on Saturday evening, he gave it no further attention.

Appellee's evidence tended to show that Mrs. Holley and her husband, W. C. Holley, had resided continuously in Fort Worth since 1892, and had resided at 1003 Kennedy Street about four years at the time the message should have been delivered; that Mr. Holley had been a laundryman, had served on the police force in Fort Worth for several years, and that he and his wife were well known in the neighborhood where they lived; that they had been known in that neighborhood by the names of "Halley," "Haley" and "Holley;" that they frequently received mail, and bills and accounts which they paid, addressed to W. C. Halley; that there was no one else in that neighborhood with a similar name; that many people who knew them called them by the name of Halley instead of Holley.

Mrs. Holley testified that she was at home on the afternoon of March 9, and was expecting a message from Austin relative to her sister's condition; that about four o'clock on that afternoon she saw appellant's boy go into the house at 1002 with a message; that she stood on her porch until the boy came out, when she called to him and asked him who that message was for; that without ever looking at it he told her is was for "Lally;" that she then told him she had a very sick sister in Austin, from whom she was expecting a message; that the boy made no reply, but got on his wheel and rode off, and she saw him no more; that she watched him until he left that street and that he did not go to any other house on the street except to the house at 1002; that the people then living in that house were strangers and roomers, who had been there only a few days and who soon thereafter left that neighborhood; that if the messenger boy had shown her the telegram she would have recognized it as being for her and would have gone that night to Austin; that if she had received it the next day she would have gone to Austin and attended her sister's funeral and burial; that it was too late to do so when the telegram was finally delivered; that there were three houses on the same side of the street as hers, and eight on the other side of said street, and that she and her husband were well known to all of the residents on that street except to a few transit roomers.

A Mr. Newberry, who lived at 1006 Kennedy Street, testified that he was at home on the evening of March 9; that no one called there that day with a message for Mrs. W. C. "Halley" or W. C. "Haley;" if the boy had shown him the message or had inquired for Mrs. W. C. "Haley" he could have sent him to the plaintiff's residence, as there was no W. C. "Haley" in that neighborhood.

A Mrs. Stamps, who lived at the time at 1008 Kennedy Street, testified that she had no recollection of any messenger boy coming to her house on the afternoon of March 9 and inquiring for Mrs. W. C. "Halley."

The people who at that time lived at 1004 Kennedy Street were

street car people who had moved away and who were unknown to Mrs. Holley.

We do not think it can be said as matter of law that the evidence fails to establish negligence on appellant's part, or that it establishes such contributory negligence proximately entering into the result as is conclusive against appellee's right of recovery. Regardless of the mistakes in the address of the telegram, it was appellant's duty to seasonably deliver it to the person for whom it was intended if by the exercise of ordinary care and diligence it could do so. (W. U. Tel. Co. v. Burrow, 10 Texas Civ. App., 122; W. U. Tel. Co. v. Smith, 33 S. W., 743; W. U. Tel. Co. v. Cain, 40 S. W., 624; W. U. Tel. Co. v. De Jarles, 8 Texas Civ. App., 109; W. U. Tel. Co. v. Waller, 37 Texas Civ. App., 515; W. U. Tel. Co. v. Newhouse (Ind.), 33 N. E., 800; Herron v. W. U. Tel. Co. (Ia.), 57 N. W., 696.)

The evidence authorized the conclusion that both appellant's receiving agent and delivery boy knew the import of the telegram and the importance of its prompt delivery; that when told that no one by the name of the addressee lived at the number given, the delivery boy actually went to the number and house where appellee had long lived and on a street where he was well known, both as Holley and Halley, and was actually addressed by appellee's wife, for whom the tele- gram was intended, with a specific inquiry for the name of the ad- dressee, stating at the time that she was expecting a telegram from a very sick sister from the very place from which the one in question had been sent. Under such circumstances can it be said that appel- lant's employes were without negligence? The fact that the messenger was informed that no such person lived at 1002 Kennedy Street tended to show that a mistake in address had been made, and the messenger acted, according to his statement, consistently with a con- sciousness of such fact, for, as he testified, he inquired at several other numbers on the street. It did so suggest to Mr. Gordon, the receiving agent, when informed of the failure to deliver Monday morning, and he thereafter learned with certainty within fifteen or twenty minutes for whom the telegram was intended. Why it did not so suggest itself to Mr. Hare or Mr. Sparks, who succeeded Mr. Gordon Saturday evening and Sunday, is not very clear. They also knew the importance of the message, of the effort and failure to deliver and, if competent men of experience, of the liability of a writ- ing or transmitting agent to make an *a* where an *o* was intended. Had they felt concerned it would seem that ordinary diligence would have suggested an inquiry of the receiving office for a better address, or some effort beyond what they made.

But regardless of any failure on the part of Mr. Hare or Mr. Sparks, it must certainly he held that the evidence warrants a find- ing of negligence on the part of the messenger boy. Appellee's evi- dence tends to contradict the boy's testimony to the effect that he made inquiries at places on Kennedy Street other than at 1002. Had he inquired at all of the places he mentioned, it seems improbable that he would not have been directed by some of the persons of whom he made the inquiry to Mrs. Holley. She and her husband were well known, as before stated, by the name of both Halley and Holley, and

no one else of either name lived on the street. Or when accosted as he was by Mrs. Holley, had the messenger exercised any care in plainly answering her inquiry or in making inquiry for a Mrs. W. C. Halley, 1002 Kennedy Street, who can doubt but that Mrs. Holley would have known at once that it was for her? We think the evidence as a whole undoubtedly supports the issue of negligence on appellant's part.

What we have said in disposing of the issue of appellant's negligence applies also in part to the issue of contributory negligence relied upon as a defense. The evidence is to the effect that the surviving husband, Mr. Carter, wrote the telegram and gave it to his friend Mr. Terrell to send; it was addressed by Mr. Carter to Mrs. W. C. Holley, 1002 Kennedy Street, but how it happened that he wrote 1002 Kennedy Street instead of 1003 is not explained. This is left for mere conjecture. It may have been caused by want of recollection, by misinformation, or by the distressed and disturbed condition of his mind at the time; but however it happened, it can not be said that the evidence requires a finding that Carter was guilty of negligence in giving the wrong number. The same, it seems to us, is to be said as to the alleged negligence of Terrell. He testified by deposition that he copied and delivered the telegram for transmission as Mr. Carter had written it, but a letter written by him to one of appellant's auditors was introduced in evidence, which states that: "After seeing the original telegram written by me, I am convinced that I wrote the name Halley instead of Holley, as it should have been. I can account for this only on the thought that I wrote the name from a card which Reverend Carter had written for me, and I mistook the name for Halley instead of Holley. This name was written on a card with one or two others, and by mistake it was written Halley. I can account for the mistake in no other way." This evidence, it seems to us, does not compel a finding of negligence on Mr. Terrell's part attributable to appellee.

Regardless, however, of the question of negligence on the part of Carter and Terrell, the evidence does not require a finding that the misdirection of the telegram was a proximate cause of the failure to deliver it in time for Mrs. Holley to attend her sister's funeral. It seems plain from the evidence already discussed that such delay for such a period was due to the negligence of appellant's employes alone. The messenger went in fact to the right number of the street, talked to Mrs. Halley, and she would have undoubtedly received it either as Halley or Holley, had she not been misinformed as to the name of the addressee by the messenger. And later yet, had Hare and Sparks exercised the diligence demanded by the nature of the telegram, and actually exercised by Gordon, no sufficient reason appears why it could and would not have been delivered to Mrs. Holley at least in time to take the Sunday night train for Austin, which would have enabled her to attend her sister's funeral Monday morning, it being admitted that there were regular morning and evening trains leaving Fort Worth for Austin at eight thirty a. m., and eight twenty p. m., and that the time required for the trip was about twelve hours.

It follows that in our opinion the court did not err in refusing to give a requested instruction to find for appellant, as first assigned;

or in submitting the issues, or in overruling the motion for a new trial, as urged in the second, third, fourth and sixth assignments of error. We are further of opinion that appellant's special instruction number two, presented in the fifth assignment of error, was, so far as necessary, sufficiently embodied in the court's general charge, which as a whole correctly and sufficiently presented the material issues to the jury.

We conclude that the judgment should be affirmed, and it is so ordered.

*Affirmed.*